STOEVER (PAYSON v.). See Case No. 10,-863.

## Case No. 13,473.

### STOKELY et al. v. SMITH.

[2 Ben. 407.] [2]

District Court, S. D. New York. May, 1868.

CHARTER PARTY—DILIGENCE—BLOCKADED PORT—DEVIATION.

1. Where a vessel was chartered in New York for a voyage to Port au Platte, St Domingo, or, in case of that port being blockaded, to another open port in the same island, or a market, and back to New York, the vessel to use all diligence in port and at sea, and the charterer, in answer to a libel to recover the charter money, set up various delays by the vessel, one being a deviation to Turks Island, for the purpose of inquiring whether Port au Platte was blockaded. *Held,* that the vessel would have been liable to seizure as a prize, if she had gone direct to Port au Platte for the purpose of inquiring whether the blockade of that port was raised.

2. As there was no restriction in the charter as to where the master should make inquiry,

and as Turks Island was shown to be a proper place to make such inquiry, the vessel was not chargeable with any loss occasioned by her going to Turks Island for that purpose, only the necessary time having been consumed.

3. Evidence of instructions from the charterer to the master of the vessel, in reference to going to Turks Island, could not affect the rights of the parties in regard to matters that were covered by the charter.

4. For delay occasioned by a mistake of the master in passing by a port, the owners of the vessel were liable.

This was a libel to recover the sum of $1,-083.85, as a balance, due on a written charter party, made at New York, between the master of the schooner Indus, owned by Benjamin Stokely and others, the libellants, and the respondent, Haskell G. Smith, on the 20th of May, 1858. The charter party chartered the vessel to the respondent, for a voyage "from the port of New York to Port au Platte, St. Domingo, or, in case of that port being blockaded, to another open port on same island, or a market, and back to New York, with a supercargo on board free, not to go to Port au Prince except in case of stress of weather, on the terms following, viz." One of those terms was, "and use all diligence in ports and at sea." The charter money was stipulated to be "six hundred dollars per month, payable in United States currency, upon completion of charter." The libel set forth, that the vessel entered on the fulfilment of the charter on the 20th of May, 1858, and proceeded to Port au Platte, and thence to Porto Rico and back to New York, and was thus employed for two months and ten days, and that the charter money payable was $1,400, of which $1,083.85 remained unpaid, and had been demanded from the respondent, and payment refused.

The defences set up in the answer were, that the vessel did not use all diligence in ports and at sea; that she lost three days, through the wilful misfeasance of the master, in not sailing from New York as soon as she should have sailed by three days; that she lost two days more by stopping at Turks Island, instead of going direct to Port au Platte; that she lost two days more by unnecessarily going beyond the port of San Juan, in Porto Rico, through the incompetency of the master in navigating the vessel, and being obliged to return over her track; that one bale of tobacco in the cargo was negligently damaged by the master and crew, to the amount of five dollars; that, if the vessel had sailed from New York when she ought to have done so, she would have arrived at Port au Platte within ten days, or thereabouts, after the blockade of that port was raised, and five days in advance of any other vessel laden with provisions, and would have sold her cargo at high prices, but that, in consequence of the delays set forth, other vessels laden with provisions arrived before the cargo of the Indus could be sold, and prices declined, and the respondent suffered a loss of $2,000; that the libellants

---

[1] [Reported by Hon. William Cranch, Chief Judge.]

[2] [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]

were entitled in no event to recover for more than two months and three days' time; that there had been paid, on account of the charter party, $375.15, and $5 for damage to the tobacco; and that there remained due no more than $878.85.

W. R. Beebe, for libellants.
A. W. Griswold, for respondent.

BLATCHFORD, District Judge. I think that the master of the Indus is, according to the weight of the evidence, not responsible for the three days' delay in sailing from New York, but that that delay was caused by the storm which was setting in just as the vessel was ready to sail, and that the master was justified in not putting to sea before he did.

As to the deviation to Turks Island, the evidence shows, that it was for the purpose of inquiring whether the blockade of Port au Platte was raised; that no more time than was necessary was consumed in making that inquiry; that Turks Island was the most proper and convenient place for making the inquiry; and that, before the vessel left New York, it was known that Port au Platte was blockaded, but it was not known whether or not the blockade was raised. A great deal of irrelevant testimony has been put in by deposition, on the part of the respondent, to show conversations by him and his agents with the master of the Indus, and instructions by him to the master, in reference to his going to Turks Island. But the rights of the parties are fixed by, and depend upon, the written charter party, and cannot be varied or affected by any such conversations or instructions, in regard to matters that are covered by the charter party. The charter party, on its face, contemplates a blockade of Port au Platte, and the evidence is, that it was blockaded, and that such blockade was known at New York before the vessel sailed from New York. The substance of the charter party is, that the vessel shall go to Port au Platte, if Port au Platte is not blockaded, and that she shall not go to any other port, as her port of destination, if Port au Platte is not blockaded, but that, if Port au Platte is blockaded, she shall go to some other port, as her port of destination. There is no restriction against her going to Turks Island, or any other place, to inquire as to the blockade, the only restriction as to going to any particular place being a restriction against going to Port au Prince, except in case of stress of weather. Under the charter party, therefore, the vessel had the right to exercise the privilege of inquiring at a proper port in regard to the blockade of Port au Platte. If, with a knowledge of the blockade of Port au Platte, the vessel had deliberately contracted to go there, she would undoubtedly have been bound to go there directly. But she did not so contract.

Her contract was the very reverse, and was a contract to go there only in case the port was not blockaded. If, under this charter party, the vessel had gone, with this charter party on board, and a clearance for Port au Platte, directly to Port au Platte, and the blockade had been still in force, and she and her cargo had been captured, the plea that she had gone there to make inquiry as to the raising of the blockade, with no intention of entering if she found the port still blockaded, would not have availed her, and the respondent could have held her liable to him for his cargo, on the ground that, under the charter party, she was not authorized to go there if the port was blockaded. It is well settled that, where knowledge of a blockade exists at the commencement of the voyage of a vessel, she cannot lawfully approach a blockaded port, even for the bona fide purpose of inquiring as to the continuance of the blockade, and, if she does, she is liable to capture. The Delta [Case No. 3,777]; The Cheshire [Cases Nos. 2,655, 2,657]; The Empress [Id. 4,477, 4,478]. And, where the owner of the cargo knows of the blockade when the vessel sails, he loses his cargo, as lawful prize, in case of capture because of any fault committed by the vessel. The Sunbeam [Case No. 13,615]. The master of the Indus, therefore, in the discharge of his proper duty to the vessel and to the respondent, was bound not to approach Port au Platte, for any purpose, under the facts existing in this case, until advised of the raising of the blockade; and his going to Turks Island, to make inquiry on that subject, was proper. The obligations of the parties to the charter party were reciprocal. The respondent could have held the vessel liable for the loss of his cargo if she had gone directly to Port au Platte and found it blockaded, and had been captured with her cargo, and had been condemned for attempting to violate the blockade. The respondent is, therefore, not entitled to any allowance for any loss of time by the deviation to Turks Island.

A clear negligent loss of two days' time is shown, resulting from the mistake of the master, in passing by the port of St. Juan. For this loss the respondent is entitled to be allowed.

As there was no delay, for which the vessel is responsible, in her voyage to Port au Platte, the question raised, as to the liability of the vessel for the loss by the respondent of prospective profits on the cargo, does not come up for decision.

If the parties do not agree, there must be a reference to a commissioner, to compute the amount due to the libellants on the basis of this decision, the respondent to be allowed also for damage to the tobacco, if proved, and, for the amount so to be computed, with costs, the libellants will be entitled to a decree.